1

**GOOD GUSTAFSON AUMAIS LLP**
J. Ryan Gustafson (Cal. Bar No. 220802)
2   Christopher T. Aumais (Cal. Bar No. 249901)
2330 Westwood Blvd., No. 103
3   Los Angeles, CA 90064
Tel: (310) 274-4663
4   jrg@ggallp.com

5

6

*Counsel for Plaintiff and the Proposed Class*
7

8                     UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          SOUTHERN DIVISION

11

12   EVAN MUSA, individually, and on          CASE NO.
     behalf of those similarly situated,
13                                             **CLASS ACTION COMPLAINT**
                         Plaintiff,
14                                             **Demand for Jury Trial**

15          v.

16   AMBROSIA NUTRACEUTICALS,

17   LLC,

18                       Defendant.

19

20

21

22

23

24

25

26

27

28

GOOD GUSTAFSON AUMAIS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Evan Musa brings this action on behalf of himself and all others similarly situated against Defendant AMBROSIA NUTRACEUTICALS, LLC. Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## **NATURE OF THE ACTION**

1.      In an attempt to capitalize on consumer demand for health-focused and "gluten free" foods, Defendant sells its Planta products throughout the United States. However, as Defendant knows, its "gluten free" products actually contain gluten. Thus, the statement on Defendant's products' labels and other forms of marketing that claim the products are "gluten free" is false, misleading, and designed to deceive consumers into paying a price premium and choosing Defendant's products over a competitor's product.

2.      This action seeks to remedy the deceptive and misleading business practices of Defendant with respect to their marketing and sales of its Planta protein (hereinafter "Product" or "Products") throughout the United States of America.[1]

3.      Building upon this deception by labeling and advertising the Products as "gluten free," Defendant creates the impression amongst reasonable consumers that the Products contain no gluten. However, this is not true, and Defendant fails to adequately inform consumers that the Products contain gluten.

---

[1] At the time of this filing, the following Planta products are included in this definition: Campfire S'Mores flavored protein. This definition is not exhaustive, and shall include all of Defendants' products that are similarly deceptively marketed.

4.      Now, instead of informing the public that it had previously deceived consumers by including a dangerous allergen, Defendant literally covers up the Gluten Free claim with a removable sticker without alerting retailers, consumers, or regulators to its deception.





GOOD GUSTAFSON AUMAIS LLP

5.      Even worse, while the label is "covered up," Defendant continues to market the Products as gluten free despite being alerted by numerous consumers that they've been deceived.

 **veganpaloma** I was so excited when my order finally arrived. However, it's labeled wrong. It has honey and GLUTEN! The package still says vegan and GLUTEN FREE. I have a gluten sensitivity. Very, very disappointing.

15w   2 likes   Reply

 **Betsey Sims**
As the picture shows, the campfire s'mores are labeled as "Gluten Free." However, I received my order today and the bag does not state gluten free and the ingredient list contains wheat flour.
How can I get a refund?

2w   Like   Reply                        1 

 **Michael King**
Betsey Sims 30 day return/refund policy is on the website also a complete nutrition breakdown listing all ingredients for any intolerance .

1w   Like   Reply

CLASS ACTION COMPLAINT

GOOD GUSTAFSON AUMAIS LLP



CLASS ACTION COMPLAINT

GOOD GUSTAFSON AUMAIS LLP



6.   Reasonable consumers have been tricked, and continue to be tricked, while Defendant continues to profit from its deceptions.

7.   Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentation that the Products are "Gluten Free" when purchasing the Products.

8.   These deceptive representations appear prominently on the Products' label. For example, on the principal display panel of the Products, "Gluten Free" is featured prominently.

GOOD GUSTAFSON AUMAIS LLP



9. Plaintiff and Class Members paid for the Products over and above comparable products that did not purport to be "Gluten Free." Given that Plaintiff and Class Members paid for the Products based on Defendant's misrepresentations that they are "Gluten Free," Plaintiff and Class Members suffered an injury in the amount paid.

10. Additionally, Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be "Gluten Free." Given that Plaintiff and Class Members paid a premium for the Products

based on Defendant's misrepresentations that they are "Gluten Free," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

11.    Defendant's conduct violated and continues to violate, *inter alia*, the consumer protection statutes of many states including, but not limited to, California and Florida. Defendant breached and continues to breach its express and implied warranties regarding the Products. Defendant has been and continue to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

12.    This Court has personal jurisdiction over Defendant AMBROSIA NUTRACEUTICALS, LLC. Defendant  is a California limited liability company with its principle place of business located in Costa Mesa, California. Further, Defendant purposefully avails itself of the California consumer market and distributes the Products to many locations within this County and hundreds of retail locations throughout the State of California, where the Products are purchased by hundreds of consumers every day.

13.    This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00,

CLASS ACTION COMPLAINT

GOOD GUSTAFSON AUMAIS LLP

exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

14.     Venue is proper in this District under 28 U.S.C. § 1391. Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendant conducts business in this District. Additionally, Defendant's headquarters is located in this District.

## **PARTIES**

15.     Plaintiff is a citizen of Florida.

16.     Defendant AMBROSIA NUTRACEUTICALS, LLC  is a California limited liability company with its principal place of business in Costa Mesa, CA.

    a.   From its headquarters in California, Defendant produces, markets and distributes the Products in retail stores across the United States including stores physically located in the State of California and this District.

17.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

18.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the defendant did the act, omission, or transaction through its officers, directors,

GOOD GUSTAFSON AUMAIS LLP

employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## FACTS

### A. Gluten Free Representations are Valuable

19.     Consumers have become increasingly concerned about the effects of gluten in their diets. Companies such as the Defendant have capitalized on consumers' desires for purportedly "gluten free" products.

20.     Consumer surveys suggest a gluten-free diet is one of the most popular U.S. health food trends in recent years.[2]

21.     Part of this surge in interest and demand comes from the consumer's perception that food products with a gluten-free label are healthier than other products.[3]

22.     Indeed, consumers are willing to pay, and have paid, a premium for products labeled "gluten free" over products that are not so labeled.

23.     Studies show consumers pay premium prices over 200% for gluten free food products,[4] while other studies show a premium in excess of 500%.[5]

---

[2] Miller, D. M. 2016. "Maybe It's Not the Gluten." JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION INTERNAL MEDICINE 176(11):1717-1718.

[3] Navarro, C. "The Effect of Gluten-Free Labels on Customer's Perception of Healthiness, Expected Price, and Willingness to Purchase." (2016) *available at* https://repository.tcu.edu/bitstream/handle/116099117/11315/Navarro__Cori_Jo-Honors_Project.pdf?sequence=1&isAllowed=y.

[4] Stevens L, Rashid M., *Gluten-free and regular foods: a cost comparison*. CAN J DIET PRACT RES. 2008 Fall;69(3):147-50. doi: 10.3148/69.3.2008.147. PMID: 18783640. ("On average, gluten-free products were 242% more expensive than regular products.")

[5] Singh, J & Whelan, K. (2011). *Limited availability and higher cost of gluten-free foods. Journal of human nutrition and dietetics* : JOURNAL OF THE BRITISH DIETETIC ASSOCIATION. 24. 479-86. 10.1111/j.1365-277X.2011.01160.x. ("All 10 gluten-free versions of wheat-based foods were more costly than their standard counterparts (76-518% more expensive.")

– 9 –

24.     This surge in demand from consumers has grown the gluten-free market to a valuation in excess of $6.6 billion.[6]

25.     Reasonable consumers, including Plaintiff and Class Members, value "gluten free" products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as "gluten free."

**B. Failure to Adhere to Gluten Free Representations is Dangerous**

26.     According to the FDA, gluten allergies are one of the eight major allergies related to food.[7]

27.     For a person with celiac disease, exposure to gluten can be severely debilitating and possibly deadly.

28.     The FDA states:[8]

In people with celiac disease, foods that contain gluten trigger an immune response that attacks and damages the lining of the small intestine. Such damage may not only limit the ability of celiac disease patients to absorb nutrients, leading to problems such as iron deficiency anemia, osteoporosis, and malnutrition, but it puts them at increased risk for potentially serious health problems, including intestinal cancers and autoimmune diseases such as diabetes.

29.     For people that suffer from Celiacs Disease, maintaining a strict gluten free diet is important.

---

[6] Talley, N.J., and M.M. Walker. 2016. "Celiac Disease and Nonceliac Gluten or Wheat Sensitivity: The Risks and Benefits of Diagnosis." JOURNAL OF AMERICAN MEDICAL ASSOCIATION INTERNAL MEDICINE 177(5):615-616.

[7] U.S. Food & Drug Administration, *Food Allergies,* Jan. 31, 2022, https://www.fda.gov/food/food-labeling-nutrition/food-allergies.

[8] *Id.*

GOOD GUSTAFSON AUMAIS LLP

30.    "It has been found that a strict [Gluten Free Diet] reduces the risk of developing colon cancer, oropharyngeal cancer and intestine adenocarcinoma in patients with [Celiacs Disease]."[9]

31.    Because of the extreme danger that gluten can present to consumers, the FDA maintains strict requirements for "gluten free" representations.

32.    Failure to adhere to these strict requirements can create deadly consequences for consumers.

**C. Defendant Represents That the Products Are Gluten Free**

33.    On the front of the Product, Defendant represents to consumers that the Product is "Gluten Free."

34.    For example:



---

[9] Kalra, N., Mukerjee, A., Sinha, S., Muralidhar, V., Serin, Y., Tiwari, A., Verma, A. K."Current updates on the association between celiac disease and cancer, and the effects of the gluten-free diet for modifying the risk (Review)". International Journal of Functional Nutrition 3.1 (2022): 2.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

35.     Additionally, on the back of the Product, Defendant asserts that it contains "NO GLUTEN."

> NO
> ARTIFICIAL FLAVORS / COLORS, GLUTEN, LACTOSE,
> SATURATED FAT, CHOLESTEROL OR ANIMAL PRODUCTS

36.     These representations are not limited the packaging. Rather, the "Gluten Free" representations are part of Defendant's core marketing message.

37.     For example, on its official Youtube Channel, Defendant's spokesperson Ant Woodz promotes the Products as Gluten Free.[10]



---

[10] The Ambrosia Collective Official Youtube Channel, *Ant Woodz tries Ambrosia's Planta in Campfire S'mores (plant-based & Vegan Friendly)* (Feb. 2, 2022), https://www.youtube.com/watch?v=77HlTUhr9eg.

38.    Further, it uses targeted advertisements that represents that the

Products are "Gluten Free."[11]



---

[11] The "Gluten Free" representation is surrounded by the S'Mores and in the center of the advertisement.

GOOD GUSTAFSON AUMAIS LLP

39.     Defendant's website emphasizes the Gluten Free nature of the Products.



IS PLANTA GLUTEN-FREE?                                                    ✕

All flavor of Planta are Gluten Free, with the exception of Sprinkle Cupcake which contains a trace amount of gluten. This is because we had to make our own custom sprinkles - we didn't want use the artificial stuff that's out there.

40.     Moreover, these Gluten Free representations are rebroadcasted through social media posts – both paid and organic – that are distributed throughout the Internet.[12]



---

[12] Opperman Fitness Youtube Channel, *New! S'mores Ambrosia Planta REVIEW | Plant Based Protein | Vegan | How Good Is It?* (Feb. 18, 2022), https://www.youtube.com/watch?v=KUks5F1DlZ8.

GOOD GUSTAFSON AUMAIS LLP

41.     Defendant represents to consumers that the Product is "Gluten Free," with intent, and this message is reinforced in a coordinated marketing campaign.

**D. <u>The Products Are Not Gluten Free</u>**

42.     Despite these representations, the Products actually contain gluten.

43.     The ingredients reveal two ingredients that contain gluten.[13]

Other Ingredients: Pea Protein, Brown Rice Protein, Vegan Mini Vanilla Marshmallows (Tapioca Syrup, Cane Sugar, Water, Tapioca Starch, Carrageenan, Soy Protein, Natural Vanilla Flavors), Brown Rice Protein, Premium Graham Cookie Gems (Enriched Flour (Wheat Flour), Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid), Graham Flour, Sugar, Palm Oil, Honey Flavor, Molasses, Salt, Sodium Bicarbonate, Natural Graham Flavors, Annatto Color), Cocoa Powder, Organic Coconut Sugar, Natural Cacao Flavors, Dicalcium Malate, Gum Blend: (Xanthan Gum, Gum Acacia, Guar Gum), Sodium Chloride, Sunflower Lecithin, Sucralose, Monk Fruit Extract, Iron Bisglycinate Chelate

44.     Wheat flour contains gluten.[14]

45.     Graham flour contains gluten.[15]

46.     Defendant is aware that the Products contain gluten.

47.     When Defendant is alerted to these false representations by customers, it fails to respond.

 **veganpaloma** I was so excited when my order finally arrived. However, it's labeled wrong. It has honey and GLUTEN! The package still says vegan and GLUTEN FREE. I have a gluten sensitivity. Very, very disappointing.

15w   2 likes   Reply

---

[13] Emphasis added.

[14] https://www.hopkinsmedicine.org/health/wellness-and-prevention/what-is-gluten-and-what-does-it-do

[15] https://www.beyondceliac.org/gluten-free-diet/is-it-gluten-free/graham-flour

CLASS ACTION COMPLAINT

GOOD GUSTAFSON AUMAIS LLP



**Betsey Sims**
As the picture shows, the campfire s'mores are labeled as "Gluten Free." However, I received my order today and the bag does not state gluten free and the ingredient list contains wheat flour.
How can I get a refund?

2w   Like   Reply                              1 

**Michael King**
Betsey Sims 30 day return/refund policy is on the website also a complete nutrition breakdown listing all ingredients for any intolerance .

1w   Like   Reply

48.  Defendant fails to inform the public that its "Gluten Free" Products have been, and continue to be, contaminated with gluten.

49.  Instead, it recently started "covering up" the false representations with stickers.



GOOD GUSTAFSON AUMAIS LLP





GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP



50.     Rather than properly informing customers of its misrepresentations, Defendant would rather "cover it up."

E.  **Plaintiff Purchased the Product in Reliance of the Gluten Free Representation**

51.     Plaintiff purchased the Product in early 2022 from a Vitamin Shoppe store in Delray Beach, Florida.

a.  Prior to purchasing the Product, Plaintiff saw and read the front of the product packaging, and relied on the representation and warranty that the product would be "gluten free."

CLASS ACTION COMPLAINT

b. Plaintiff understood these representations to mean that the Product did not contain gluten.

c. Plaintiff later discovered that Product actually contained gluten after he became sick from consumption.

d. Plaintiff purchased the Product at a substantial price premium, and would not have purchased the products had he known that the labeling and marketing she relied on was false, misleading, and deceptive.

e. Plaintiff would purchase the Product again in the future if Defendant changed the composition of the Products so that they conformed to the "gluten free" labeling and marketing.

**F. Defendant's Wrongful Conduct Caused Plaintiff's and Class Members' Injuries**

52.    Defendant knows that consumers are willing to pay more for gluten free foods due to the perception that gluten free foods are higher quality and a healthier alternative to the competition.

53.    As a result of these unfair and deceptive practices, Defendant has likely collected millions of dollars from the sale of the Product that it would not have otherwise earned. Plaintiff and Class Members paid money for food products that are not what they purported to be or what they bargained for. They paid a premium for the Product when they could have instead bought other, less expensive products that do not purport to be gluten free.

GOOD GUSTAFSON AUMAIS LLP

54.     In making the false and misleading representations described herein, Defendant knew and intended that consumers would pay for, and/or pay a premium for, a Product labeled and advertised as gluten free.

55.     As an immediate, direct, and proximate result of Defendant's false and misleading representations, Defendant injured the Plaintiff and the Class Members in that they:

    a.  Paid a sum of money for Products that were not what Defendant represented;

    b.  Paid a premium price for Products that were not what Defendant represented;

    c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

    d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

    e.  Could not be used for the purpose for which they were purchased; and

    f.  Were of a different quality than what Defendant promised.

56.     Had Defendant not made the false, misleading, and deceptive representations, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

57.     Plaintiff and the Class Members paid for Products that were purported to be gluten free but received Products that contained gluten.  The products Plaintiff and the Class Members received were worth less than the products for which they paid.

GOOD GUSTAFSON AUMAIS LLP

58.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the representations.

59.     Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

60.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

61.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

62.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and the Class Members.

## CLASS DEFINITIONS AND ALLEGATIONS

63.     Plaintiff, pursuant to Federal Rule of Civil Procedure 23, brings this action on behalf of the following classes (collectively, the "Class," "Classes," and "Class Members"):

GOOD GUSTAFSON AUMAIS LLP

a. **Multi-State Consumer Class**: All persons in the States of California, Florida, Illinois, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New York, Pennsylvania, Oregon, and Washington who purchased the Products.[16]

b. **Florida Class**: All persons who purchased Defendant's Product within the State of Florida and within the applicable statute of limitations.

c. **Nationwide Class**: All persons who purchased Defendant's Product within the United States and within the applicable statute of limitations period.

64. Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Classes, the judge to whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

65. The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, tens of thousands of units of the Products to Class Members.

---

[16] The States in the Multi-State Consumer Class are limited to those States with similar consumer protection laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Illinois (815 ILCS 505/1, et seq.); Maryland (Md. Com. Law §§ 13-301); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws § 445.901, et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. 407.010, et seq.); New Jersey (N.J. Stat. § 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); Pennsylvania (73 Pa. Stat. Ann. §§ 201-1 et seq.); Oregon (Or. Rev. Stat. §§ 646.605, et seq.); and Washington (Wash Rev. Code § 19.86.010, et seq.).

GOOD GUSTAFSON AUMAIS LLP

66.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

    a.  whether Defendant misrepresented material facts concerning the Products on the label of the Product;

    b.  whether Defendant's conduct was unfair and/or deceptive;

    c.  whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the Classes;

    d.  whether Plaintiff and the Classes are entitled to equitable and/or injunctive relief;

    e.  whether Defendant breached express and implied warranties to Plaintiff and the Classes;

    f.  whether Plaintiff and the Classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

67.    Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the classes, purchased Defendant's Products bearing the "gluten free" representations and Plaintiff sustained damages from Defendant's wrongful conduct.

68.     Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Classes.

69.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

70.     The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

71.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual

GOOD GUSTAFSON AUMAIS LLP

actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

## COUNT I
### Violation of State Consumer Protection Statutes
### (On Behalf of the Multi-State Consumer Class)

72.     Plaintiff repeats and realleges each and every allegation above as if set forth herein.

73.     The Consumer Protection Acts of the States in the Multi-State Consumer Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

74.     Defendant intended that Plaintiff and the other members of the Multi-State Consumer Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by its deceptive conduct.

75.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff, and other members of Multi-State Consumer Class, have sustained damages in an amount to be proven at trial.

## COUNT II
### Violation of California's Unfair Competition Law ("UCL"),
### CAL. BUS. & PROF. CODE §§ 1720, et seq.
### (On Behalf of the Nationwide Class)

76.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

77.     Plaintiff brings this Count individually and on behalf of the members of the Nationwide Class.

78.     Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

79.     Defendant violated the "unlawful" prong of the UCL by violating the False Advertising Law ("FAL"), as alleged herein.

80.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

81.     Defendant violated the "fraudulent" prong of the UCL by misrepresenting that the Products are "gluten free" when, in fact, they are made with gluten.

82.     Plaintiff and the Class Members lost money or property as a result of Defendant's UCL violations because: because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with gluten; (b) they paid a substantial price premium compared to other products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

83.     In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

84.  Plaintiff and the Class also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

85.  Because Plaintiff and the Class Members' claims under the "unfair" prong of the UCL sweep more broadly than their claims under the FAL or UCL's "fraudulent" prong, Plaintiff's legal remedies are inadequate to fully compensate Plaintiff for all of Defendant's challenged behavior.

## COUNT III
### Violation of The False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, et seq. (On Behalf of the Nationwide Class)

86.  Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

87.  Plaintiff brings this Count individually and on behalf of the members of the Nationwide Class.

88.  California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

89.  Defendant committed acts of false advertising, as defined by §§17500, et seq., by misrepresenting that the Products are "gluten free" when they are not.

GOOD GUSTAFSON AUMAIS LLP

90.     Defendant knew or should have known through the exercise of reasonable care (i.e. pre-market testing) that its representations about the Products were untrue and misleading.

91.     Defendant's actions in violation of §§ 17500, et seq. were false and misleading such that the general public is and was likely to be deceived.

92.     Plaintiff and the Class Members lost money or property as a result of Defendant's FAL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with gluten; (b) they paid a substantial price premium compared to other food products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

93.     Defendant profited from the sale of the falsely and deceptively advertised Products to unwary consumers.

94.     As a result, Plaintiff and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

95.     Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and the Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

96.     Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA or commercial code (for Plaintiff's breach of warranty claims), and restitution is not limited to returning to

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GOOD GUSTAFSON AUMAIS LLP

Plaintiff and Class Members monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies available under the commercial code are more limited than the equitable remedies available under the FAL, and are therefore inadequate.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class)**

97.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98.    Plaintiff brings this claim individually and on behalf of the Nationwide Class against the Defendant.

99.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted and represented that the Product is "gluten free."

100.    Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product is "gluten free."

101.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

102.    Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and Class Members regarding the Product, became part of the basis of the bargain between Defendant and Plaintiff and the Class, thereby creating an express warranty that the Product would conform to those affirmations of fact, representations, promises, and descriptions.

103.    The Product does not conform to the express warranty because it contains gluten.

104.  Defendant was aware that the Products failed to conform to the representations made on the packaging and marketing.

105.  Rather than fixing the problem and alerting the public to the presence of a dangerous allergen, Defendant attempted to "cover it up" with a sticker.

106.  Defendant was provided additional notice of these issues by numerous public complaints and inquiries concerning the presence of gluten in its Products.

**COUNT V**
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of the Nationwide Class)**

107.  Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

108.  Plaintiff asserts this claim individually and on behalf of the Nationwide Class.

109.  Defendant is a "merchant" as defined under the U.C.C. and by the respective state statutes under which Plaintiff alternatively asserts this claim.

110.  The Products are "goods" as defined under the U.C.C. and by the respective state statutes under which Plaintiff alternatively brings this claim.

111.  Defendant impliedly warranted that the Products were of a merchantable quality. The law implies a warranty that the Products were merchantable in the relevant transactions. The Products, when sold and at all times thereafter, were not in merchantable condition due to the defects and other conditions as alleged above and are not fit for the ordinary purpose for which "gluten free" food products are used

GOOD GUSTAFSON AUMAIS LLP

112.    At the point of sale, the Products contained unseen manufacturing or materials defects whose manifestation renders the product ineffective. These defects in the Products existed when the Products left Defendant's possession and rendered them unfit for their ordinary and intended purpose. At all relevant times, including when the Products entered the stream of commerce and were purchased by Plaintiff and Class Members, the Products were defective and not capable of functioning as advertised.

113.    Defendant breached the implied warranty of merchantability because the Products are not of a merchantable quality, but instead contained the defects. Had Plaintiff and Class Members known of the defects, they would not have purchased Defendant's Products, or would have paid less for them.

114.    Plaintiff and Class Members' interactions with Defendant suffice to create privity of contract between Plaintiff and Class Members, on the one hand, and Defendant, on the other hand; however, privity of contract need not be established nor is it required because Plaintiff and Class Members are intended third party beneficiaries of contracts (including implied warranties) between Defendant and the retailers who sell the Products. Defendant's warranties were designed for the benefit of consumers who purchased the Products.

115.    As a direct and proximate result of the breach of said warranties, Plaintiff and Class Members were injured and are entitled to damages.

116.    Defendant was provided notice of these issues. Defendant had exclusive knowledge of the defects before the Products were sold. Defendant also received notice of the defects by the large volume of complaints lodged by consumers.

GOOD GUSTAFSON AUMAIS LLP

117.    Defendant's breach of the implied warranty of merchantability damaged Plaintiff and Class Members in an amount to be determined at trial.

**COUNT VI**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class)**

118.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

119.    Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against the Defendant.

120.    At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiff and the Class.

121.    Plaintiff and members of the Class conferred upon Defendant nongratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing. Defendant accepted or retained the nongratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

122.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and Class

GOOD GUSTAFSON AUMAIS LLP

Members because they would not have purchased the Products if the true facts had been known.

123. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

**COUNT VII**
**Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")**
**Fla. Stat. § 501.201 et seq.**
**(On Behalf of the Florida Class)**

124. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

125. Plaintiff asserts this claim individually and on behalf of the Florida Class.

126. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et seq. The stated purpose of FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

127. Plaintiff and Florida Class Members are "consumers," and the transactions at issue in this Complaint constitute "trade or commerce," as those terms are defined in Fla. Stat. § 501.203(7)- (8).

128. FDUTPA declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

129.   Defendant manufactures, distributes, markets, advertises, and sells the Products.

130.   The Products are "goods" within the meaning of FDUTPA.

131.   For the reasons discussed herein, Defendant violated and continues to violate FDUTPA by engaging in the conduct described herein, which are unconscionable, deceptive, unfair acts or practices proscribed by FDUTPA. Defendant's acts and practices, including their omissions, were likely to, and did, in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

132.   Defendant engaged in the following unconscionable, unfair, deceptive, and unconscionable practices:

a.   Defendant manufactured, distributed, marketed, advertised and sold the Products, which posed serious safety risks to consumers, and which serious safety risks existed when the Products left Defendant's control and at the point of sale;

b.   Defendant knew, or otherwise should have known, that the Products posed serious safety risks to consumers, but failed to disclose or concealed these risks from consumers;

c.   Defendant knew the serious safety risks posed by the Products were unknown to consumers, and would not be easily discovered by Plaintiff and Class Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Products;

d. Defendant warranted that the Products are "gluten free" and safe to consume, when, in fact, the Products contain gluten and pose serious safety risks to consumers; and

e. Defendant represented to consumers, including Plaintiff and Class Members, that the Products are safe and fit for the use for which they were intended, despite the fact that Defendant knew, or otherwise should have known, that the Products were unsafe and unfit, posing serious safety risks to consumers.

133. Defendant warranted and represented that the Products were "gluten free" and were suitable for their intended use. However, the Products, which are marketed as being "gluten free" actually contain gluten.

134. Defendant had advanced and exlusive knowledge of material facts concerning the gluten content in its Products.

135. Defendant knew, or otherwise should have known, that the Products posed serious safety risks to consumers, including Plaintiff and Class Members.

136. Despite Defendant's exclusive knowledge of material facts concerning the existence of the serious safety risks posed by Products, Defendant concealed the serious safety risks from consumers by failing to disclose the presence of gluten to consumers.

137. Plaintiff purchased the Products believing them to be "gluten free" based upon Defendant's representations about the Products. Plaintiff was unaware of the presence of gluten in the Products at the time he purchased the Products.

138. Defendant's practices described herein were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff and Class Members, would not have purchased the Products, or would have

paid significantly less for them, had they known that the Products were not as represented.

139.   Defendant's violations described herein present a continuing risk to Plaintiff and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

140.   As a result of Defendant's misconduct, Plaintiff and Class Members have been harmed and suffered actual damages in that they purchased the Products which are worthless.

141.   As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Florida Class Members have been damaged, and are entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

142.   Plaintiff seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, and seeks attorneys' fees and any other just and proper relief available under FDUTPA and applicable law.

## **RELIEF DEMANDED**

143.   WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the members of the Class;

b.  For an order declaring the Defendant's conduct violates the statutes and laws referenced herein;

c. For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Class for all causes of action;

d. For an order requiring Defendant to immediately cease and desist from selling their misbranded Products in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

e. For prejudgment and postjudgment interest on all amounts awarded;

f. For an order awarding punitive damages; and

g. For an order awarding attorneys' fees and expenses and costs of suit.

### JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: June 6, 2022

**Good Gustafson Aumais LLP**

/s/    J. Ryan Gustafson
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
cta@ggallp.com

*Counsel for Plaintiff and the Proposed Class*